( Decided July 11th, 1865.)

---

DAVID E. THOMAS, Jr., Admr. *d. b. n., c. t. a.* of WILLIAM YOUNG, *vs.* HENRY H. KNIGHTON.

ORPHANS' COURT, POWERS OF: ADMINISTRATOR *d. b. n.*, APPOINTMENT OF: NOTICE.—The 70th sec. of Art. 93 of the Code, construed in connection with the 31st and 33rd sections, cannot mean that the Orphans' Court may capriciously appoint as administrator *d. b. n.*, whom they please and when they please, without notice or opportunity of making application to those entitled.

The injunction—"giving preference, however, to the person entitled, if he shall actually apply for the same"—necessarily imports that such person shall have a day in Court to make such application.

Thomas, Admr. of Young, *vs.* Knighton.

The completion of an administration is often more important, to all concerned, than its commencement: no reason can be assigned for requiring the parties entitled to be summoned in the first instance, that does not apply when an administrator *d. b. n.* is to be appointed.

REVOCATION OF LETTERS *d. b. n.*, AND RESTORATION OF ADMINISTRATION TO ONE HAVING RENOUNCED BY MISTAKE.—Where one entitled to administration has renounced, and recommended another, who has been appointed administrator *d. b. n.*, and it afterwards appears, to the satisfaction of the Orphans' Court, that such renunciation was executed by mistake, the Court will cancel their appointment, and restore the first party to the right of administration; and, in such state of case, any further appointment of a third party, in violation of the rights of the party so retored, is error.

APPEAL, EFFECT OF TO STAY PROCEEDINGS OF ORPHANS' COURT.—Where an appeal has been taken from an order of the Orphans' Court, revoking letters *d. b. n.*, and appointing another administrator *d. b. n.*, a further order passed by said Court, on application of the next of kin, pending the appeal, but before an appeal bond was executed, uniting another in the administration, not being such an order as would prevent that Court from conforming to the decision of the Court of Appeals, whether that decision was eventually for or against the appellant, is not stayed by the first appeal, but being a modification of the order appealed from, must stand or fall with it.

APPEAL from the Orphans' Court of Baltimore city.

This is an appeal from an order of the Orphans' Court of Baltimore city, revoking the letters of the appellant, as administrator *de bonis non*, with the will annexed of William Young, deceased, and granting such letters to the appellee. The facts of the case are fully stated in the opinion of this Court.

The cause was argued before BOWIE, C. J., and COCHRAN and WEISEL, J.

*Edward Holloway*, for the appellant, argued:

1st. That there was no error in the order of the Orphans' Court, of the 9th of August 1864, granting letters *de bonis non* to the appellant; Maria Young, the widow, being the person entitled, having filed a written renunciation, the Court had the power, under the law, and in the exercise of

a sound discretion, to grant them; that under the testamentary law, a distinction is made, as to the powers of the Court, in granting original letters, and letters *de bonis non;* in the first case, the Court has no discretion; in the latter, the discretion is granted by the express words of the law,— the exercise of the discretion going to the protection of the personal estate already held within the jurisdiction of the Court.

The Orphans' Court, being a Court of special limited jurisdiction, created for the purpose of protecting the estates of deceased persons, it is submitted, that if the jurisdiction once attaches, it attaches for all the purposes for which it was created; for it cannot be well said that at any time the jurisdiction is suspended, (except on appeal.) See Code, Art. 93, title Administrator *d. b. n.*, sec. 70. *Mitchell vs. Mitchell*, 1 *Gill*, 66. *Rawlings vs. State, &c.,* 2 *Md. Rep.*, 204. *Townsend vs. Brook*, 9 *Gill*, 90. *Lowe vs. Lowe*, 6 *Md. Rep.*, 347.

2nd. That there is error in the order of the 29th of September 1864, revoking the letters of the appellant, on the petition and prayer of the appellee.

The appellee shows, by his petition, that at the time it was filed, Maria Young, widow of William Young, had already filed a petition against the appellant, (and that it was still pending,) charging that the renunciation made by her had been obtained by fraud, and praying for a revocation of the letters.

It is submitted that this Court cannot affirm the order, without first passing on the rights of Maria Young. Although made a defendant below, no summons issued for her; and there was no appearance and no answer. The Appellate Court will review the order appealed from on the facts presented in the record. Code, title Appeal, Art. 5, sec. 12. *Allegre vs. Md. Ins. Co.*, 6 *H. & J.*, 415. *Richardson vs. The State*, 2 *Gill*, 439. *Johnson vs. Thomas*, 6 *Md. Rep.*, 407. *Leadenham vs. Nicholson*, 1 *H. & G.*, 267. *Duvall vs. Howard*, 1 *H. & J.*, 477.

3rd. That the renunciation of Maria Young as executrix, did not destroy her rights as widow; that the mere declination of the appointment to an office, does not destroy a right fixed by the law.

4th. That the Court below had no right, after the appeal had been entered, to change or modify its order of the 29th of September 1864, by associating Edward Otis Hinkley in the administration, thereby forcing the appellant to a second appeal. An appeal from an order of the Orphans' Court, suspends the operation of the order pending the appeal. *State, use of Calvert, vs. Williams,* 9 *Gill,* 176.

5th. That *Edwards vs. Bruce,* 8 *Md. Rep.,* 387, and *Stockdale vs. Conaway,* 14 *Md. Rep.,* 99, are not directly in point.

6th. That the costs should be paid out of the estate, the appellee having put the appellant to the trouble and vexation of a second appeal, when the subject matter was all embraced in the first appeal.

*E. Otis Hinkley,* for the appellee:

1st. The widow did not, in her first renunciation, reserve the right of administration *de bonis non,* if she should survive her co-executor. The will gave her a certain estate in lieu of her thirds and dower, and nearly seven years had elapsed since the testator's death. She had no further right in her husband's estate. See *Knighton vs. Young & Young,* 22 *Md. Rep.,* 359. In *Hoffman vs. Gold,* 8 *G. & J.,* 84, the Court says: "The policy of the law is to bind up the right of administration with the right of those entitled to the estate. An important part of the administration, viz: the payment of legacies given upon her death, she never could have attended to. *Thornton vs. Winston,* 4 *Leigh.,* 152.

(If the second point be good, it is unnecessary to decide this first point.)

2nd. If the first renunciation did not bar the widow, her second did, and she could not delegate her right to a

41      v.23.

stranger, to the exclusion of the next of kin entitled. *Edwards vs. Bruce*, 8 *Md. Rep.*, 387, and *Stockdale vs. Conaway*, 14 *Md. Rep.*, 99, are both directly in point. See Code, title Testamentary Law, Art. 93, secs. 19, 31, 33, 38, 44 and 70. *Cook vs. Carr*, 19 *Md. Rep.*, 1.

3rd. The appellant swore to the allegation in his answer, that the estate had been fully administered, when the evidence is, "that no administration account had ever been settled" by the son, by the appellant, or by any other person; and when the will gives (upon the contingency of the death of the son of the testator without issue, before the death of his wife, which has happened) to each of several persons, two of whom, at least, are shown by the evidence to be still living, "the sum of eight hundred dollars, to be paid to them out of the effects of his estate, on the happening of the death of his wife," who is still living, which must, when she dies, be paid by selling the property given to her for life.

4th. The widow's rights against the appellant, on her petition to revoke for mistake, could not affect the appellee's rights against the appellant. Even if she had not been made a party defendant, the appellant could not complain, for if the appellee had any right against him, he must lose in any event. He cannot plead her rights against the appellee, in order to sustain himself. She must take care of herself, and he of himself.

But, in fact, the widow was a party defendant in this petition. The two cases were, by the pleadings, necessarily so far blended that, although the fact does not appear in this record, her petition must have been dismissed by the Orphans' Court when the order was passed in this case, and even if it were not so, she is a party in this case, and her rights were adjudicated upon, and the Court granted the letters to the appellee, and she did not appeal. *Edwards vs. Bruce*, 8 *Md. Rep.*, 387.

As to the order associating E. O. Hinkley with the appellee, from which also an appeal is taken, it *is* sufficient to

say, that the only object of the appeal was to stay the revocation of the appellant's letters until affirmation in this Court, and no other point is necessarily involved, since, if the appellant has no rights as to the administration, being a stranger in blood to the testator, he cannot be heard to object to the Court's associating another person with the appellee, upon the prayer of the appellee himself.

And even if the objection came from the next of kin, next entitled, it may be said, that there is no principle of law violated by associating in the administration another person with the next of kin, upon his or her request. Although the appeal from this second order does not necessarily involve any point of law which this Court can be called upon by this appellant to decide, because if the first order be affirmed, their second order must be affirmed for the same reasons, yet it seems just, after the clear exposition of the law in 14 *Md. Rep.*, 99, that the appellant ought, himself, to pay the costs of appeal out of his own pocket, and that they should not be allowed out of the estate of the testator.

Bowie, C. J., delivered the opinion of this Court:

Two questions are presented by the appeals in this case: 1st. Whether, in granting letters of administration *d. b. n.*, the Orphans' Court may, in their discretion, select any competent person, without first summoning those who would be entitled on an original application for administration? 2nd. Whether, an appeal having been taken from an order revoking the letters *de bonis non*, and appointing another, the Orphans' Court, pending that appeal, but before an appeal bond executed, can, on application of the next of kin, modify the order appealed from, by uniting another in the administration?

The testator, William Young, died on the 26th of October 1857, having made his will, and constituted his widow, Maria, and his son, William H., his executors, and devising and bequeathing considerable estate, real and personal, to his grand-son, the appellee. The widow renounced her

right to the executorship on the 7th of December 1857, and letters testamentary were granted to the son, who died on the 22nd June 1864, leaving his testator's estate in part unadministered. On the 9th of August 1864, a renunciation of the widow, with a request that administration *de bonis non* should be granted to the appellant, was filed in the Orphans' Court, who granted letters, on the same day, to the appellants, without summons or notice to the appellee. Soon after, (when does not appear,) the widow filed a petition, alleging her renunciation was procured by mistake, and praying the letters granted might be revoked. Pending which, on the 17th of September 1864, the appellee filed his petition, claiming, as a grand-child of the testator, a right to the administration *de bonis non*, in the event of his grand-mother's refusal, alleging her renunciation had been obtained by mistake, and praying the letters *de bonis non* granted thereon might be revoked.

The appellant and Maria Young, the widow, were made parties to this petition; the former appeared and answered; the latter was not summoned, and did not appear. After proof that the appellee was the only grand-son of the testator and devisee under his will; that Wm. H. Young left neither children nor grand-children, or other descendants; that Maria Young, the widow, is living, and the appellee resided in the city, the Orphans' Court, on the 29th of September 1864, revoked the letters *de bonis non* granted the appellant, and ordered letters *d. b. n.* to be issued to the appellee. From which decree an appeal was entered on the 1st of October 1864, and bond filed on the 27th of October ensuing.

In the interval between the passage of the first order, and the filing of the appeal bond, on the 11th of October 1864, the appellee filed his petition, praying that Edward O. Hinkley, Esq., be associated with him in the administration, which petition was granted by an order passed the same day, from which an appeal was also prayed, &c.

The case of *Stockdale & Wife, vs. Conoway, Admr.*, 14 *Md. Rep.*, 99 to 107, referred to by the counsel on each side,

is as nearly coincident with the present as is possible; and if it had been decided under the provisions of the Code, instead of the testamentary system of 1798, ch. 101, would be conclusive. These provisions are, however, so similar, that any judicial interpretation of the one, must materially affect the other, They are, in this respect, substantially the same.

The parties entitled to the administration were a brother and sister. The former renounced his right, and recommended the son of the deceased executor, who was appointed administrator *de bonis non.* The sister filed her petition sixty-eight days after, praying the letters of administration might be revoked, and it was held that they should be revoked, the parties in interest summoned, and the question decided according to the provisions of the testamentary system. The sections of the Act of 1798, ch. 101, regulating the subject of renunciation and granting letters *de bonis non,* are sub-ch. 14, sec. 1, and sub-ch. 5, sec. 6. The former provides, "that if any person, entitled to administration, shall deliver or transmit to the Orphans' Court a declaration, in writing, that he is willing to decline the trust, the Court shall proceed as if such person were not entitled;" and the latter, "in case any executor," &c., "shall die before the estate shall be fully administered, letters of administration *de bonis non* shall be granted to the person entitled, agreeably to the rules hereinbefore laid down, and the proceedings shall be in all respects the same as if administration had been originally granted." 1798, ch. 101, sub-ch. 5, sec. 6.

The 70th section of Art. 93, Code, enacts: "If an executor or administrator shall die before administration is completed, letters *de bonis non,* or *de bonis non cum testamento annexo,* may be granted at the discretion of the Court, giving preference, however, to the person entitled, *if he shall actually apply for the same.*" To ascertain who are the persons entitled, and the meaning of the terms "actually apply for the same," we must refer to the 31st and 33rd sections of the same Article. The former, the 31st,

describes the order in which next of kin shall be entitled, viz: "If there be neither husband nor wife, nor child, nor grand-child," &c., "or if these be incapable, or *decline* or *refuse to appear, on proper summons or notice,* administration may be granted at the discretion of the Court." The 33rd, prescribing notice, says: "It shall not be necessary to give notice to a party entitled to administration, if he be out of the State, nor shall it be necessary to summon or notify collateral relations more remote than brothers or sisters of the intestate, in order to exclude them from administration; and no relations, except a widow, child or grandchild, father, brother, sister or mother, shall be considered entitled, unless they shall apply for the same."

The widow, child and grand-child, and others in that class, are entitled under these sections, whether they apply or not, unless they be incapable, or decline, or refuse to appear, on proper summons or notice.

The 70th section, providing for letters *de bonis non,* at the discretion of the Court, giving preference to the person entitled, if he shall actually apply for the same, must be construed in the spirit of the preceding sections. Its language, literally interpreted, cannot be gratified without supposing a notice or opportunity given to actually apply, before granting the letters of administration *de bonis non,* or an obligation on the Court to revoke, in case an application be made within a reasonable time thereafter.

The 70th section, construed in connection with the 31st and 33rd, cannot mean that the Orphans' Court may capriciously appoint whom they please, when they please, administrator *de bonis non,* without notice, or opportunity to those entitled of making application. The injunction, "giving preference, however, to the person entitled, if he shall actually apply for the same," necessarily imports that such person shall have a day in Court to make such application. It would, otherwise, be unmeaning. "The right to administer upon the estate of a deceased relative, is a highly valuable one, which cannot be delegated. The poli-

cy of the law, in selecting persons nearest in interest, in preference to others more remote, was to bind up the interest of the administrator with that of persons entitled to the estate." *Young, Admr. of Young,* 8 *Gill*, 286. The completion of an administration is often more important to all concerned than the commencement. No reason can be assigned for requiring the parties entitled to be summoned in the first instance, that does not apply to the second.

The 38th section of the same Article enjoins: "If any person entitled to administration, shall deliver or transmit to the Orphans' Court a declaration, in writing, that he is willing to decline the trust, the Court shall proceed as if such person were not entitled."

Mrs. Young, the widow of the deceased, being first entitled to the administration *de bonis non*, it would have been premature and presumptuous in Mr. Knighton to have applied before she had renounced, and when she had declined it was the duty of the Court to have summoned the person next entitled. No other construction is consistent with an impartial administration of justice. Exparte proceedings are inequitable, unfair and oppressive.

It was necessary for the Orphans' Court to decide upon the petition of Mrs. Young, against the appellant, before granting letters to the appellee; because, if Mrs. Young executed her renunciation by mistake, the Court, upon being satisfied of that fact, would cancel the same, and restore Mrs. Young to her right of administration. The Orphans' Court were therefore right, in revoking the letters of the appellant, but in error in granting them to the appellee.

The order of the 11th of October 1864, which is the subject of the second appeal, being such as would not prevent that Court from conforming to the decision of the Court of Appeals, whether that decision was eventually for or against the appellant, was not stayed by the first appeal, but being a modification of the order first appealed from, must stand or fall with it, the first being premature and erroneous, for the reasons assigned, the second is equally so.

The decree of the Orphans' Court, revoking the letters of the appellant, will be affirmed, but so much of the same as direct letters to be granted to the appellee, and to the appellee and Edward O. Hinkley, Esq., is reversed.

*Affirmed in part, and reversed in part,*
*and remanded for further proceedings.*

(Decided July 11th, 1865.)