Bowie *vs.* Bowie.

(Decided 5th December, 1890.)

FRANCIS M. BOWIE *vs.* R. IRVING BOWIE.

*Appointment of Administrators—Appeal.*

Where one of several persons forming a distinct class, all of whom are equally entitled, is to be selected as administrator *de bonis non*, the selection of one of them, without regard to seniority, to the exclusion of the others, is committed to the discretion of the Orphans' Court, and from the exercise of this discretion no appeal will lie.

APPEAL from the Orphans' Court of Prince George's County.

The case is stated in the opinion of the Court.

The cause was argued before MILLER, ROBINSON, IRVING, BRYAN, and McSHERRY, J.

*William Stanley,* for the appellant.

*Joseph S. Wilson,* and *C. C. Magruder,* for the appellee.

McSHERRY, J., delivered the opinion of the Court.

The appeal in this case was taken from an order of the Orphans' Court of Prince George's County granting to R. Irving Bowie, and refusing to grant to Francis M. Bowie, letters of administration *de bonis non cum testamento annexo* on the estate of William B. Bowie, deceased. The appellant and the appellee are brothers, the one the fourth, and the other the youngest, child of the testator. Upon the death of William B. Bowie letters testamentary were granted to his widow, the executrix named in his will. After her decease the Orphans' Court appointed the appellee administrator *de bonis non ;* but a petition being filed by the appellant and two elder brothers, wherein administration was claimed by the appellant, that order was revoked, and subsequently, all the other children, except the appellant and the appellee, having renounced any claim to administer and all being before the Court, the Orphans' Court again appointed the appellee and dismissed the petition of the appellant. From that order this appeal was taken.

It is contended by the appellant that because he is older than the appellee he is under the law absolutely entitled to letters of administration in preference to the latter. Whether this is so or not is the sole question in the case, and the solution of that question must be sought for in the statutes of this State and nowhere else.

By *sec.* 70 *of Art.* 93 of the Code it is provided that "if an executor or administrator shall die before administration is completed, letters *de bonis non* or *de bonis non cum testamento annexo* may be granted at the discretion

of the Court, giving preference, however, to the person entitled if he shall actually apply for the same, &c." *Sec.* 71 declares that in no case shall the executor of an executor be entitled as executor to administration *de bonis non* of the first deceased. *Secs.* 18 *to* 31, both inclusive, prescribe the order of priority to be observed by the Orphans' Court in granting letters of administration; but nowhere is priority given on account of seniority in age. *Sec.* 18 vests a discretion in the Orphans' Court to appoint a widow or child or one of the children of an intestate without giving any preference to the eldest child. Next to the widow or children a grandchild shall be preferred; but there is no designation of the eldest grandchild. After a grandchild the father shall be preferred, and after the father brothers and sisters; then the mother and then the next of kin, and where there are no relations then administration shall be granted to the largest creditor applying therefor. Now, here are four separate, distinct and successive classes of persons,—children, grandchildren, brothers and sisters, and next of kin,—who are or may be entitled to administration; and there is no provision whatever that as between themselves, in any class, the mere fact of seniority shall control the selection. Other rules of precedence are carefully laid down, for instance, that males shall be preferred to females in equal degree of kin; a *féme sole* shall be preferred to a married woman in equal degree; relations on the side of the father shall be preferred to relations on the side of the mother in equal degree, &c., &c.; but beyond these and some other similar rules not necessary to be alluded to, there is not a single provision in the Code designating any one of a particular class as entitled to administration in preference to another of the same class. If all the children are sons, or, there being no children, if all the grandchildren are unmarried females, there is nothing in the

Code to give one child or one grandchild priority over the others merely because of seniority in age. And so if the persons entitled are brothers or sisters of the intestate there is no requirement of the statute that the Orphans' Court shall appoint the eldest. This is also true in case the next of kin are entitled to administration. Now, who is to determine to which one of a class consisting of several persons equally entitled letters of administration are to be committed? When the statute is silent, the authority to determine this must rest somewhere, and confessedly no tribunal other than the Orphans' Court has any jurisdiction at all over the subject of the appointment of an administrator. It of necessity follows, then, that whenever the contingency arises, as it must often do, where one of several persons forming a distinct class, all of whom are equally entitled, is to be selected as administrator, that selection—the designation of one of them to the exclusion of the others—is committed to the discretion of the Orphans' Court. And this Court has so expressly decided. "It is true," say the Court in *Cook vs. Carr*, 19 *Md.*, 1, "that in a case where two or more persons are equally entitled to letters of administration the Court may, in its discretion, determine to which of them the letters shall go. * * * * Although the Court, in such a case, may grant letters of administration to any one of a class of persons preferred by law, it has no power to discriminate against a person or class so preferred by granting the letters to one standing in a more remote degree of right."

It is perfectly true that the Orphans' Court is a Court of strictly limited jurisdiction, and that its jurisdiction cannot be extended or enlarged by implication. It is equally true that but little is left to its discretion. Still, it seems to us clear that the Legislature intended to vest in that Court the power to single out and appoint, without regard to seniority in age, one of a class

all equally entitled, or else a restriction would have been imposed by the use of appropriate words in the statute as has been carefully done in every other instance where a discrimination was intended to be made against some who, with others, stand in an equal degree of relationship to the intestate. When, therefore, the Code in *sec.* 70 *of Art.* 93 directs the Orphans' Court to give preference to the person *entitled* to administration *de bonis non cum testamento annexo* if he shall actually apply for it, it means, not that an elder son is entitled in preference to a younger one, for it does not say so, but that a son is entitled in preference to a grandson; not that the eldest grandson is entitled in preference to the youngest, but that a grandson is entitled in preference to a father, and so on through the successive and consecutive classes we have indicated.

It has been earnestly argued that some expressions found in the opinion of the Court in *Stocksdale and Wife vs. Conaway, Adm'r*, 14 *Md.*, 99, establish a priority on account of age. But we do not think so. In that case Henry Cover appointed his son-in-law, Reuben Conaway, executor. He left a son, Josiah S. Cover, and two married daughters, Susannah Conaway, wife of Reuben, and Elizabeth Stocksdale and a grand-daughter, the child of a deceased daughter. The executor died before fully administering the estate, and the Orphans' Court, upon Josiah S. Cover, the son, filing a renunciation, appointed John H. Conaway, son of the deceased executor, administrator *de bonis non*. Sixty-eight days thereafter Mrs. Stocksdale and her husband filed a petition in the Orphans' Court praying that these letters be revoked, and asking that she be appointed. This the Orphans' Court refused to do, and an appeal was taken to this Court. In the course of the opinion it was said, "Josiah S. Cover, who was entitled (being the eldest male child of the deceased) to letters *de bonis non*, filed in the Orphans' Court a renunciation, &c." Now, Josiah S.

Cover was undoubtedly entitled to the letters, but not because he was the *eldest* male child, but because he was the *only* male child, and that circumstance under the statute gave him a preference over his sisters.    Further on in the opinion it was said, " The appellant, Elizabeth, is the eldest child of Henry Cover, and, as such, if there be no unmarried sister, is entitled to letters, in preference to all others, save Josiah S. Cover, unless that right has been lost, &c. * * * * Nothing could deprive her of her right, except her relinquishment of it or her failure to *apply* for the appointment in due time."    Mrs. Conaway had become a single woman by the death of her husband, the executor.    In reality, therefore, Mrs. Stocksdale being a married woman, was not entitled in preference to Mrs. Conaway, but the latter made no application for letters of administration.    Mrs. Stocksdale did apply and Mrs. Conaway neither appeared voluntarily nor was she brought into the case or before the Court in any way.    Consequently, the right of Mrs. Stocksdale to letters depended not upon her being the eldest child, but upon the renunciation of her brother, and upon the fact that the only other contestant was a grandson of the testator.    The question involved was not whether Mrs. Stocksdale was entitled as against all other persons standing in the same degree of kindred to the testator, because she was the eldest, but the actual contest was between a daughter and a grandson.    She, a daughter, whether single or married, was preferred by the statute to a grandson; and there was no controversy at all between the two daughters of the testator.    It seems, then, quite clear to us that nothing involved in the case in 14 *Md.* required the Court to decide that primogeniture had anything to do with the rights of any of the parties before it; and we think that what was incidentally said in the opinion upon that subject cannot be regarded as holding, or as having been intended to hold, that seniority in age gives a fixed and absolute

preference over others who, though standing in the same degree of relationship, are younger. The case of *Owings vs. Bates,* 9 *Gill,* 465, decides nothing at variance with the view we have taken. In that case the deceased left three sisters and one brother. Two of the sisters were married. It was agreed at an interview between all the parties that the single sister, as the eldest distributee, should administer the estate. During her temporary absence from the State the husband of one of the married sisters procured letters of administration. Upon the return of the single sister she applied for a revocation of these letters and for the grant of letters to herself. The relief she sought was granted, and on appeal the order was affirmed. Her right to administer was not superior to the right of her brother, even though she was the eldest distributee, unless that brother was an infant; but she was entitled to a preference over both of her married sisters, not because she was the eldest, but because she was single and they were married. The issue in the case was her right as against the husband of a married sister, and that right was fixed by the statute without regard to the fact that she happened to be the eldest distributee.

As the appellant and the appellee were both sons of the testator and had both applied for letters *de bonis non,* and as all the other sons had renounced, it became the duty of the Orphans' Court, in the absence of any statutory provision preferring one to the other, to determine in its discretion to which of the two those letters should be issued. The Orphans' Court exercised that discretion, and from its order, in this respect, no appeal will lie to this Court. It follows as a consequence that the appeal must be dismissed, and it is so ordered.

*Appeal dismissed,*
with costs.

(Decided 5th December, 1890.)